GEORGE H. HORNING AND JULIA M. HORNING, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 80860.    Promulgated April 20, 1937.

*Chester R. Hovey, Esq.*, for the petitioners.
*S. B. Anderson, Esq.*, for the respondent.

DISNEY: The respondent determined a deficiency in income tax of $266.75 for the year 1932 against the petitioners. The entire amount is in controversy.

The record shows that the deficiency notice was addressed to George H. Horning and Julia M. Horning and that the petition was subscribed and sworn to under said names, though at the hearing it appears from the testimony of George R. Horning that he is one of the petitioners and that the middle initial of his name is "R" instead of "H", as stated in the petition filed herein. No explanation of the error is stated in the record and we assume that it may have been thought that in filing a petition to this Board the same name and middle initial given him in the deficiency notice should be used. However, the record shows that George R. Horning and his wife, Julia M. Horning, received the deficiency notice and are the persons for whom the same was intended.

The petitioners assign as error that, in determining the taxable net income of the petitioners for the year 1932, the respondent erroneously disallowed a deduction of $2,525 representing the cost or purchase price to them of stock of the Middle West Utilities Co. Petitioners insist that the stock became worthless in 1932 and that they thereby sustained a loss in 1932 of the full amount of said cost.

The facts are either stipulated or established by oral testimony and by exhibits introduced in evidence, without objection, at the hearing, and are hereinafter stated so far as material to the issue herein.

The petitioners are husband and wife and reside in Seattle, Washington, though formerly residents of Chicago, Illinois. During the period from 1925 to 1929, inclusive, they purchased 10 shares of preferred stock and 150 shares of common stock in the Middle West Utilities Co. for a total sum of $2,525, the stock being purchased at the then market price.

The Middle West Utilities Co., hereinafter referred to as the Utilities Co., was a holding company and its assets consisted of the stocks and bonds of various subsidiaries engaged in the business principally of supplying electrical service.

On April 15, 1932, the United States District Court for the Northern District of Illinois, Eastern Division, appointed receivers in equity of the Utilities Co., who acted as such receivers until July 24, 1934. Also, on April 15, 1932, an involuntary bankruptcy petition was filed in said court against the Utilities Co. and shortly thereafter, July 13, 1932, an amended petition was filed, but there was no adjudication of bankruptcy resulting from either petition.

On June 7 and June 14, 1934, petitions were filed praying that said company be reorganized pursuant to the provisions of sec-

tion 77 B of the Bankruptcy Act, and the court thereupon appointed a temporary trustee. A plan of reorganization, dated September 24, 1934, in which the affairs of the company were thoroughly reviewed, was filed with the clerk of the court on October 23, 1934. Petitioners at the hearing herein offered said plan in evidence, without objection, and likewise introduced in evidence, without objection, a "Report of Noteholders' Committee", dated November 12, 1932, relative to the then condition and affairs of the Utilities Co.

In behalf of respondent there was offered in evidence, without objection, a copy of a report, dated April 27, 1934, regarding the Utilities Co., made by a valuation auditor and approved by the chief of the securities section of the Bureau of Internal Revenue.

In the plan of reorganization filed in October 1934 there were statements and figures compiled from the records of the receiver and trustee of the Utilities Co. and from other sources believed to be reliable. It is stipulated that in said plan the following statement appears:

The liabilities of Middle West to its creditors are in excess of $65,000,000. The value of its assets is substantially less than the amount of such indebtedness. Middle West is accordingly insolvent and the holders of its Preferred and Common stock therefore have no equity in its assets.

It is further stipulated:

That the bonds and general obligations of the company were superior in rank and preference to any rights of the preferred or common stockholders to receive any returns.

That the stock quotations on the stocks owned by the petitioner have averaged as follows for the following years:

| | Preferred | | Common | |
|---|---|---|---|---|
| | High | Low | High | Low |
| 1930 | 108½ | 93¾ | 38¼ | 14⅞ |
| 1931 | 100⅞ | 30 | 25½ | 4¾ |
| 1932 | 54 | ½ | 7 | ⅛ |
| 1933 | 3½ | ⅛ | ¾ | ¼ |

The report of the noteholders' committee dated November 12, 1932, introduced in evidence by petitioners, as heretofore stated, shows that assets of the Utilities Co., as then appraised, were placed at $13,526,879.20 and liabilities at $57,080,460.56, but that certain notes, bonds, advances, and stocks carried on the books of the Utilities Co. in the aggregate amount of $90,486,925.77 were not included in the assets, though obviously having some value. In that report all liabilities were allowed in full. In closing its report, the noteholders' committee, among other things, stated:

Finally, after a careful consideration of what has been accomplished and a proper appreciation of the relative importance of the fact that other things

remain to be done, the Committee finds much in the present to suggest an optimistic view of the future. The situation is by no means hopeless. Until, however, business conditions confirm our belief in the potentialities of the Middle West system, we cannot give you anything but a coldly conservative statement of the exact facts of today as we believe them to be. This we have tried to do.

The report of the valuation auditor heretofore mentioned and introduced in evidence by the respondent shows the detailed financial history and progress of the receivership, and shows that as late as April 1934 stock of the Utilities Co. was listed on the New York Curb and that there was then trading in both classes of its stock, though at low values. Such trading is some indication of value and is to be considered, though not decisive on that question.

Whether the stock in question became worthless in 1932 is one of fact. The determination of the Commission is prima facie correct. Has the presumption of its correctness been overthrown and the burden of proof resting on petitioners been sustained by the evidence submitted?

The fact that the report of the noteholders' committee disclosed liabilities greatly in excess of assets does not necessarily show that petitioners' stock in question had then become worthless, in view of the fact that, in making its estimate of the value of assets, certain notes, bonds, stocks, etc., of uncertain value but carried on the books of the Utilities Co. at an amount in excess of ninety million dollars, were not included, whereas in estimating on the same date the Utilities Co.'s liabilities, all liabilities were allowed or included in full. *Simon Sherman*, 18 B. T. A. 969. Worthlessness of petitioners' stock was not established in 1932 merely because receivers of the Utilities Co. were appointed by a court. The report of the valuation auditor mentioned above shows that as late as 1934 stock of the Utilities Co. was listed on the New York Curb and both its preferred and common stock were then traded in. The stipulation by the parties in this proceeding shows that in 1932 stock quotations on the character of stock owned by these petitioners and here involved indicate that both preferred and common had value—were not absolutely or practically worthless—and were in 1933 also quoted at a lower figure.

It is true that the plan of reorganization dated September 24, 1934, embodied the statement relied on by petitioners, that the preferred and common stockholders of the Utilities Co. had no equity in its assets, its liabilities to its creditors being in excess of $65,000,000. That situation or condition did not, however, appear to exist in 1932, when the noteholders' committee reported it found much "in the present to suggest an optimistic view of the future."

After carefully considering the entire record, we find no identifiable event which establishes the worthlessness of petitioners' stock

in 1932. In our opinion, the record indicates that at that date and under the then existing circumstances it was practically impossible for the petitioners or any one to have known that petitioners' stock was worthless, the facts and circumstances then known indicating such stock was not worthless. There is no identifiable event in the record showing the stock became worthless in 1932. *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398. We, therefore, are of the opinion and hold that the respondent did not err in his determination of the deficiency in tax and his action in respect thereto is approved.

*Decision will be entered for the respondent.*